Ms. Bofes, good morning. Good morning, Your Honors. May it please the Court, I'm appearing pro bono for Petitioner Armando Gutierrez, who is in the courtroom today. And I'm joined at council table with, actually, my law clerk at the time throughout the proceedings, who is now an attorney. Her name is June Lynn Mora. In this case, I saw that we had three issues that might be of interest to you. One was the jurisdiction issue brought up by the government in their brief. And then the second issue was the termination issue of her prior status. And then the third issue being that if the record, whether the record demonstrated that she would be more likely tortured if returned to Mexico. So I wanted to know which one you would like to address. I'm a little unclear on the regulatory question about whether or not termination can occur during removal proceedings. The regulation seems to read that they can. Can you help me with your argument as to why they can't? Well, and I'm not saying that they can't. I'm saying that it didn't happen here. So I definitely agree that they can, but that there would be some sort of specific hearing regarding the issue. The way it was done here, it was very kind of chopped up. In fact, the government didn't even supply us with all the record of conviction and all those documents. But isn't that why they introduced the conviction evidence in order to terminate? Because if they are able to prove that your client is an aggravated felon, then under the statute, she would not be eligible for relief. That is correct. Well, she wouldn't be eligible for withholding. Right. So it would terminate the withholding of removal. Correct. And at the end of the hearing, the district court basically denied all relief, or the immigration judge denied all relief to her. Correct. I mean, can't we assume that there was a termination of the prior grant of withholding? Well, she never, the judge never actually states that. And the problem was that she didn't even find that there was an aggravated felony at the motion hearings. So it wasn't until the day of trial that, right before we start questioning, that she even says that she finds it's an aggravated felony and a particular serious crime. Well, so she did find it. It's a question of when you're saying she found it. Because you said she never found it, but she did find it. She did find it at that point, right before we started questioning. So we didn't have a hearing on that aspect because the documents that the government submitted weren't submitted until in June, like the end of June, June 24th. So that was never, there was never any discussion regarding that. Ms. Lopez, let me ask you this question. We have jurisdiction to determine our jurisdiction, but if we're satisfied that there is, in fact, in this record, two aggravated felony convictions, isn't that the end of our inquiry at that point? We no longer have jurisdiction to proceed further? Well, I would argue because of the fact that there was no hearing, because of the fact that I wasn't able to bring up the exceptions to the particular serious crime allegation. I feel that she felt that she fell in between the exceptions. Why didn't there need to be a separate hearing? Why couldn't you have brought that up at the hearing that you were having? I mean, you talk about it came up as you're about to start questioning. Well, you're in a hearing then. Is there anything that prevents you from bringing up whatever you have to say about the convictions at that time? Probably not. So what's the point? Well, I mean that... I mean, you're there. Why is there a need for a whole separate hearing to get to the hearing that you're already in? Well, first off, that the government never followed the regulations in filing any notice of intent to terminate. I guess I'm a little bit with Judge Tallman saying and what Judge Clifton are saying. I mean, your client undoubtedly had one of the most horrible childhoods and lives that you could imagine, but these two felonies at the end create a very unfortunate situation for your client, and I've not heard anything yet that would say that there could be any other result than the result that was here, except for like I want to buy some more time and I want to save the... There's no indication that they really aren't what the government has said that they are and what the court found what they are. Well, like I said, because I felt I didn't have a chance to argue at that point about the particular... What evidence would you have introduced had you had more notice? Well, I would because the probation report wasn't let in until the 24th, the June 24th time period. The merits hearing? No, the merits hearing was July 27th, but the government filed these probation report documents, so then I got more factual evidence to find out that it was a nominal amount. It was $20. She was just a peripheral participant. It was more for an offer to sell than any sale. She wasn't the one getting the money or, you know, supplying the drugs. There were a lot of facts that... Do you have the discretion to sort of, I don't know what the word is, overlook? I think nullify. Nullify an otherwise valid aggravated felony conviction of sale of drugs? I don't know, Your Honor. I don't know of any case that says he or she can. So, I mean, I'm with Judge Callahan. You have a very sympathetic case on the facts, but the arguments that you're proffering to us that you would have made at the hearing with all due respect are legally irrelevant to what the immigration judge is allowed to do under the law or, frankly, what we're allowed to do under the law. Because I think the language of selling can mean that you... It doesn't say anything about it has to be of a certain amount that you're selling. So, you know, that... Well, it was a very minimal amount. Well, and those are things that a court would determine in terms of sentencing, but they don't defeat the conviction. So I guess that's what we're all saying. You know, what authority do you have that had you pointed those things out to the court, that the court would have been able to nullify or, I guess, in fact, expunge or make them not exist? In essence, what you're asking to do, and we do have case law in this, you're asking to collaterally attack the aggravated felony convictions in the state court in the context of an immigration proceeding. And our case law says you can't do that. But I guess our biggest frustration was that the government failed to follow the regulations themselves. Well, I guess it's a due process argument, I guess, and the question would be I didn't have adequate notice, and therefore I didn't have an opportunity to prepare a stronger defense. And I'm still waiting to hear a defense. And you got the material before the hearing. So that seems to me to cure the notice problem. Okay. I mean, I would argue that, I mean, right before questioning, I mean, right before direct exam was the first time the judge actually said it. Well, you told us the merits hearing was in July, and you got the information in June. Right, June 24th. And the merits hearing was when? July 27th. Is that right before? No, I'm saying that the judge did not tell us where, because before when we did have the hearing on the conviction issue, she said, I cannot find that it's an aggravated felony at that point. So back in, I think it was May 11th, we, I mean, I did not know that there was, that she even deemed it as an aggravated felony. By the time you got to the merits hearing, you had time to figure out if there was anything you could say about the convictions. Was there something more that you could have presented that you did not have the opportunity to present at that time in July? To the extent this is a due process argument because of inadequate notice, it seems to me that the July merits hearing is the main event. Well, see, now, I understood that she already decided she did not find an ag foul. So I didn't feel that I needed to argue that again because that's what she found. And then it wasn't until the beginning of that hearing, our individual hearing. Why do you think you got the documents? Pardon me? Why do you think you got the documents? Why would they have given you the documents? Don't you have an independent duty to determine whether it's an aggravated felony when you represent someone? Well, it's really the burdens on the government, not on us. Well, to prove it, to make it happen. But still, if you're representing someone, it would be your job to say it's not if that's what they're trying to do, right? Yes, and I did. You had to have noted that a month before. Right, and I had submitted, I mean, I filed two motions, a motion to terminate the proceedings and then a motion regarding the charges themselves. And that's when the judge spat. The motion to terminate was you were saying they can't do it this way, right? You didn't say that it wasn't because of the aggravated felonies. You said you just can't do it. Well, the second motion was regarding the fact that it was a divisible statute and that it was unclear. The records were, the record of conviction was unclear what she was actually arrested or convicted of. It just said count one and gave, you know, the health and safety code. It didn't say, and that health and safety code is divisible. So it never said what exactly she was even convicted of. But I guess maybe I'm looking in the wrong place. I'm looking at the July 27 decision of the immigration judge. And she does make findings on page 294 and on 297 and 98 that both of these convictions do sustain the allegations in paragraphs 5 and 6 of the NTA, which are aggravated felony convictions. Correct. And that's why I'm saying it was the beginning of that trial that she even says, I now find that it's an aggravated felony. But it wasn't until that time period did I even know that she thought that. Do you want to save some time? Yes, I do. Okay. No, that's fine, Ms. Lopez. We'll hear from the government. Good morning. Morning. May it please the Court, this is Dana Camilleri for the Attorney General. It is undisputed that Ms. Gutierrez's convictions were particularly serious crimes and controlled substance convictions. And that rendered her ineligible for any relief other than deferral of removal. Well, in terms of what counsel for the petitioner is talking about, the things that she said she would have introduced to make it seem less serious, she didn't necessarily say that it wouldn't meet the elements of the offense, but that it wasn't a lot of money or that it was actually sort of an attempt or something along those lines. What's your response to that? I mean, is there anything that she said that would have defeated the aggravated felony from your? No, that's a collateral attack on the conviction, which would be inappropriate in immigration court. What she was convicted of is very clear in the record. I'm not quite understanding the petitioner's argument about she thought the court said it wasn't an aggravated felony and then she's surprised by the fact that the court said this. Can you, from your perspective of what's in the record, tell me what you think was going on and what the judge had done previously and what the judge did that day and what was the purpose of supplying the documents and what notice from your perspective was there? Well, from our perspective, on January 25, 2010, petitioner filed the motion to terminate. She was given 45 days to brief the issue. That was provided. On March 9, there was a hearing and briefing on the issues. There was further briefing on the eligibility for relief, which would include the convictions. And the immigration judge said that she would postpone her decision on whether it was an aggravated felony until the merits hearing, which is what she did. And in her decision, she determined that they were controlled substance violations. So she had, as opposed to the one month that Ms. Lopez was talking about, she had several months. That's correct. At which this issue, she was on notice of the issue and actively litigated it. Yes, Your Honor. The information that she said she would proffer, was that ever proffered in any of those hearings? Not that I could tell from the record. You weren't there? I wasn't there. But the transcript doesn't bear any of that out. What else have you got for us? Well, we acknowledge that under the circuit's case law that there is jurisdiction on the merits, although we've You don't agree with it? Exactly. All right. But reaching the merits of her claim is the government's position that she hasn't compelled the conclusion that she'll more likely than not be tortured upon her return to Mexico. First of all, most of her brief argues that there's a rebuttable presumption based on the past persecution, and that conflates the standards of asylum, withholding, and removal with deferral of removal, where there is no rebuttable presumption. The regulations are very clear that past torture is part of the consideration, but evidence of relocation and other country conditions should also be considered, and all of that was considered in this case extensively. Are there any questions regarding the merits? I don't have any. I think not. Does the panel have any other questions on this case? I don't think so.   Thank you, ma'am. Ms. Lopez? Okay, I just wanted to point out, on May 11th, that was when she said, so at least for now, I don't find he's an aggravated felon, but that could change depending on what or what isn't presented. So how did that take it off the plate? She said, I didn't make the finding today, but if I did, it's still continuing an issue. So how does that – I mean, it sounds like, from what the government's saying, you knew that this was front and center from January until the end of July and never presented what you're asking us to consider here. Well, because of the fact that she hadn't found for the aggravated felony, I didn't think there was any way that – She didn't say, I find that he's not an aggravated felon. Where's that? She says, right now, I don't find that he's an aggravated felon. Right now. I mean, the whole point of it is it's still an open question. How you can base an assumption, okay, we've won on that, I don't have to play the rest of the games, strikes me as a stretch. I mean, she seems to be saying, I'm going your way right now, but the game's not over yet. You've got to keep playing. Okay, well, I guess, again, my whole argument is that there was never – I mean, that the government didn't follow the regulations. Did she ever move in the Superior Court to expunge or somehow reopen those two prior convictions? No. I think that's the only thing you can do under these circumstances, right? And I'm not sure that there's grounds to do it, but that's the only way I know of after the fact. And, again, the problem is because we're a pro bono firm. No, I'm not criticizing you. I'm just asking whether it was done. I mean, I frankly think it probably would have been an exercise in futility. I would like to address the relocation issue. Sure, go ahead. I mean, it's our position that the record submitted by us demonstrated beyond all question that there would be – Well, compelled is the word I think you need, right? Yes. That there was three factors that were met. One, the evidence of past persecution. Two, that there was voluminous evidence of gross flagrant or mass violations. But that doesn't count on cat relief, does it? Yes. That's exactly 8 CFR 1208.16 C3, and that's under cat. It's a factor. It is a factor. You don't get the presumption, but it is a factor. That was my question. I agree. You're not arguing there's a presumption from that? No. Okay. I'm just saying it's one of the factors that they would look at. And that we gave three exhibits filled, I mean, hundreds of pages of articles, and yet the BIA and the judge only looked at the government's submission. And even if they looked beyond the table of contents and read any of those documents, they would see in those documents. Okay. My reading of the record is that the IJ and the BIA apparently did read some 2010 articles that your client submitted as showing that Mexico had made progress in tolerating gay, lesbian, and transgender individuals, even though there was still considerable room for improvement. Is that an unreasonable interpretation of those articles? I mean, you're telling me now that they didn't take them and they didn't read them? I'm saying that there were so many of them that I couldn't imagine that they focused and only mentioned the government's exhibit. Well, okay, but you submitted them. They were part of the record, correct? Correct. And you didn't track the IJ and the BIA every day to see whether they read your articles. No, but their decisions only mentioned the government's submission of Exhibit 14. I mean, I can't imagine that we gave articles of transgenders being killed, left and right, in all of Mexico. It wasn't just in one area to prove that. I mean, not only that she was tortured previously by government actors, federal and state police, that that right there should say she's not going to be safe anywhere. And that just because she wasn't shot at in Guadalajara doesn't mean that she wasn't, I mean, that there was not a continuing harm to her from the first persecution, the mental harm. Wasn't the evidence that she lived in Guadalajara for seven years? No, Your Honor, it was two years in Guadalajara.  It was five years in Zacatecas. So she went back to Mexico, to Guadalajara for two years and there was... And then to Guadalajara. Okay. Ms. Lopez, you are out of time. But thank you very much for taking the representation. The Court very much appreciates it. Thank you. The case just argued is submitted.
judges: Tallman, Clifton, Callahan